■ In the Matter of JESUS JJ. and Another, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; NILSA KK., Respondent. [636 NYS2d 507] —Casey, J. Appeal from an order of the Family Court of Tompkins County (Barrett, J.), entered February 22, 1995, which dismissed petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected.

Our review of the record discloses no basis to disturb Family Court's finding that petitioner failed to establish by clear and convincing evidence that respondent had permanently neglected her children. In particular, there is insufficient evidence to demonstrate petitioner's diligent efforts to encourage and strengthen the parental relationship (*see*, Social Services Law § 384-b [7] [a]), which is the threshold inquiry in any permanent neglect proceeding (*see, Matter of Shannon U.*, 210 AD2d 752, 753, *lv denied* 85 NY2d 807). Although petitioner established a plan for respondent and her husband, who is not a party to this proceeding, the record fails to establish that the plan was realistic and tailored to fit respondent's individual situation (*see, Matter of Jessica UU.*, 174 AD2d 98, 100-102).

A prior proceeding resulted in an adjudication that respondent's children were abused and/or neglected based primarily upon a finding that one of the children had been sexually abused (*see, Matter of Julissa II.*, 217 AD2d 743). There was no finding as to the person who actually committed the sexual abuse, but respondent and her husband were found to be responsible for the sexual abuse because it occurred while the child was in their custody and they presented no adequate explanation for the physical evidence of abuse (*supra*). Despite the absence of any finding of fact on the issue, it is apparent from the record that petitioner suspected respondent's husband was the actual abuser. Accordingly, respondent was viewed by petitioner as a "passive sexual offender" or one who fails to adequately confront the abuse of others.

Despite the disparity in petitioner's belief regarding each parent's role in the abuse, petitioner's plan and the services provided to the parents failed to treat respondent individually and apart from her husband. For example, respondent was referred to a sexual offender program and she agreed to enroll in the orientation session. To continue in the program, a participant must acknowledge responsibility for the abuse during orientation. Participants who do not acknowledge responsibility during the first 12-week session are given a second opportunity. Respondent attended the first orientation session without her husband and refused to admit any knowledge of the abuse. She was permitted to attend a second session, which her husband also attended. The social worker who conducted the sessions conceded that respondent's behavior and responses could have been affected by her husband's presence and that the attempts to bring respondent out of denial might have had different results if her husband had not been present. Petitioner was also well aware that respondent's husband generally dominated group encounters in which he and respondent were participants. Accordingly, the record does not demonstrate that respondent was given a realistic second opportunity to acknowledge responsibility for the abuse.

It is also noteworthy that after the finding of abuse and/or neglect, respondent was confused as to how she could be responsible for abuse that she did not commit, and she expressed her confusion during the intake session prior to her enrollment in the orientation for the sexual offender program. There is, however, no evidence in the record regarding petitioner's efforts to deal with respondent's confusion. The brief general description of the orientation program contains nothing to demonstrate that respondent's confusion was addressed. Respondent also testified that she did not understand some of the terms used during the orientation sessions. A social worker suggested that respondent enroll in an English as a second language program, but she already spoke English and, therefore, was not eligible. It is clear that respondent's problem was not in understanding the English language, but in understanding the meaning of certain terms used during the orientation session. Respondent's confusion was clearly justified, for during the testimony of the social worker who conducted the orientation sessions, Family Court expressed some confusion and ultimately directed the witness to refrain from the use of "jargon".

Contrary to petitioner's claim, this is not a case where the agency made the requisite diligent efforts which failed because

of an utterly uncooperative or indifferent parent (*see, Matter of Sheila G.*, 61 NY2d 368, 385). Respondent accepted all of the services to which she was referred by petitioner. Although she failed to acknowledge her responsibility for the abuse, the record does not establish that she was provided with either sufficient understandable information or a sufficient realistic opportunity to do so. The initial evaluation of respondent revealed that she had "dependency issues" and had trouble functioning by herself. Nevertheless, petitioner failed to tailor its efforts to treat these issues, but instead treated respondent and her husband together which, according to evidence in the record, could have been a factor in respondent's failure to acknowledge her responsibility for the abuse. Accordingly, Family Court correctly found that petitioner failed to meet its burden of proof in this permanent neglect proceeding.

We have considered petitioner's claim that Family Court erred in permitting irrelevant testimony and find the error harmless. The order should, therefore, be affirmed.

Mercure, J. P., White and Yesawich Jr., JJ., concur.

Crew III, J. (concurring). I am in complete agreement with the majority's conclusion that petitioner, having failed to tailor its efforts to address the particular issues confronting respondent, cannot be said to have met its threshold obligation to exercise diligent efforts to encourage and strengthen the parental relationship, and I write separately only to express my belief that an additional basis exists for finding that petitioner did not meet its burden of proof here. The petition filed in this matter was based upon respondent's failure to, *inter alia*, admit her participation in the sexual abuse and "take the steps and make the acknowledgements necessary to protect her children from [the father]". As the majority correctly notes, requiring respondent to acknowledge that the abuse occurred and to accept responsibility for it, by virtue of the fact that the abuse occurred while Julissa was in her custody, is entirely proper. However, absent a judicial determination that either respondent or her husband was the actual perpetrator of the abuse, requiring respondent to admit her participation in such abuse and/or affirmatively protect the children from the father was inappropriate (*cf., Matter of Charlene TT.*, 217 AD2d 274), and respondent cannot be faulted for failing to meet these unrealistic goals.

Ordered that the order is affirmed, without costs.