In the Matter of KATLYNN G., an Infant. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JEANETTE M.B., Appellant. [791 NYS2d 167]—

In a proceeding pursuant to Social Services Law § 384-b to terminate parental rights on the ground of permanent neglect, the mother appeals, as limited by her brief, from so much of (1) a fact-finding order of the Family Court, Suffolk County (Lehman, J.), entered September 30, 2003, as, after a hearing, found that the mother permanently neglected the child, and (2) an order of disposition of the same court entered February 18, 2004, as, upon the fact-finding order, and after a dispositional hearing, terminated her parental rights on the ground of permanent neglect and transferred custody and guardianship of the subject child to the paternal grandmother and stepgrandfather for the purpose of adoption.

Ordered that the appeal from the fact-finding order is dismissed, without costs or disbursements, as that order was superseded by the order of disposition; and it is further,

Ordered that the order of disposition is reversed insofar as appealed from, on the law, without costs or disbursements, the fact-finding order is vacated, and the matter is remitted to the Family Court, Suffolk County, for a new fact-finding hearing, and, if necessary, a new dispositional hearing in accordance herewith; and it is further,

Ordered that pending the new hearings and determinations, custody of the child shall remain with the paternal grandmother and stepgrandfather, and the petitioner shall continue efforts to strengthen the parent-child relationship between the appellant and the child and continue supervised visitation between the appellant and the child in accordance with the service plan of the Suffolk County Department of Social Services.

The subject child was born on June 28, 2000. In October 2000, while the child was in the care and custody of the appellant biological mother (hereinafter the appellant), she sustained serious personal injuries. Specifically, she was diagnosed as having sustained a fractured skull and a previous injury involving fractured ribs. After the appellant sought medical treatment for the child, the child was removed from her care. Neither the ap-

pellant nor the biological father could explain how the injuries occurred.

On February 28, 2001, an abuse proceeding against the appellant was disposed of with her admission that the child sustained a fractured skull and fractured ribs while she was in the appellant's "care and custody" and that "the child was an abused child" (see Family Ct Act § 1046 [a] [ii]). Although the appellant's statements as to who was present with her when the abuse occurred were inconsistent, she consistently maintained that she did not see the abuse occur and did not know how the injuries were inflicted.

In the instant proceeding to terminate her parental rights, the appellant was charged with permanent neglect by failing to plan for the child's future by refusing to acknowledge responsibility for the child's injuries. At oral argument of the instant appeal, the petitioner stated that the appellant must either admit that she herself inflicted the injuries, identify who in fact inflicted the injuries, or describe how the injuries occurred. According to the petitioner, the appellant's claim that she did not know how the injuries occurred constitutes a failure to accept responsibility.

In a case where it is established that the parent actively participated in the abuse, failure to acknowledge such participation may constitute grounds for terminating parental rights (see Matter of Travis Lee G., 169 AD2d 769, 770 [1991]). However, in the instant case, it was never established that the appellant actively participated in the abuse of her child.

In her February 28, 2001, admission, the appellant acknowledged that abuse occurred while the child was in her custody. The treatment program for such a passive abuser may mandate that the parent acknowledge that "she was in some way responsible for the abuse the child had endured while in her care" (Matter of Jesus II., 249 AD2d 846, 847 [1998]). A parent's lack of personal knowledge as to how the abuse of the child occurred may be indicative of a failure to properly care for the child warranting the parent to address and overcome "specific personal and familial problems which initially endangered or proved harmful to the child" (Matter of Sonia H., 177 AD2d 575, 576 [1991]). However, in the instant case, the petitioner is seeking an admission to active participation which may or may not have occurred, or an explanation which the appellant may not be in a position to give based upon her personal knowledge.

At oral argument, the petitioner asked for an opportunity to "try the underlying case" of how the abuse in fact occurred in order to establish that the mother was in fact an actual partici-

pant in the abuse or witnessed the abuse. If the appellant witnessed the abuse and continued to maintain that she did not know how the abuse occurred, such could indicate an abdication of parental responsibility.

Accordingly, we remit the matter to the Family Court for a new fact-finding hearing on these issues and a new determination of whether the appellant is guilty of permanent neglect. If the charge of permanent neglect is sustained, the Family Court shall conduct a new dispositional hearing. In the interim, custody of the child shall remain with the paternal grandmother and stepgrandfather, and the petitioner shall continue efforts to strengthen the parental relationship between the appellant and her child and continue supervised visitation, in accordance with the service plan of the Suffolk County Department of Social Services. S. Miller, J.P., Ritter, Goldstein and Mastro, JJ., concur.